# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CLAUDE ZONOU,                                  Case No. 1:12-cv-69
    Petitioner,


                                  Barrett, J.
    vs.                                        Litkovitz, M.J.


WARDEN, CHILLICOTHE                            **REPORT AND**
CORRECTIONAL INSTITUTION,                      **RECOMMENDATION**
    Respondent.

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition; respondent's return of writ with exhibits; and petitioner's reply to the return of writ. (Docs. 2, 5, 7). Respondent has also filed a copy of the trial transcript. (Doc. 6).

# I. PROCEDURAL HISTORY

## State Trial Proceedings

In November 2008, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner, an immigrant from West Africa, with two counts of felonious assault as defined in Ohio Rev. Code § 2903.11(B)(1). (Doc. 5, Ex. 1). Specifically, the indictment alleged that petitioner "with knowledge that [he] had tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome[,] engaged in sexual conduct with [the victim] without disclosing that knowledge to [the victim] prior to engaging in the sexual conduct." (*See id.*). The felonious assault offense charged in Count One allegedly occurred between March 13, 2007 and May 15, 2008, while the charge in Count Two was based on conduct that allegedly

occurred on or about May 16, 2008. (*Id.*). The Ohio Court of Appeals, First Appellate District, has provided the following summary of the facts that led to petitioner's indictment:

> Zonou had engaged in sexual conduct with T.E., an adult woman, without disclosing to her that he had tested positive as a carrier of HIV, the virus that causes acquired immunodeficiency syndrome.
>
> Zonou tested positive for HIV on March 13, 2007. His physicians had warned him of the dangers of spreading the disease. Despite this knowledge, Zonou failed to inform T.E. of his HIV status and continued to have unprotected sexual conduct with her until May 2008.
>
> As part of a gynecological exam in August 2006, T.E. had been tested and found not to carry the virus. In April 2008, T.E., who testified that she had had no other sexual partners during this period and that Zonou had not told her of his HIV status, tested positive for HIV.

(*Id.*, Ex. 9, pp. 1-2).[1]

The matter proceeded to trial before a jury, which found petitioner guilty of the felonious assault offense charged in Count One of the indictment and acquitted him on the second count. (*Id.*, Ex. 2). A sentencing hearing was held on November 19, 2009, wherein petitioner was informed by the trial court that upon completion of the sentence imposed in the case, "ICE [Immigration and Customs Enforcement] will be sending you back to Africa." (Doc. 6, Trial Tr. 467). On November 24, 2009, the trial court issued a Judgment Entry sentencing petitioner to a four-year prison term with credit for time served. (Doc. 5, Ex. 3).

### State Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the

---

[1] The Ohio appellate court summarized the facts based on evidence presented at petitioner's trial in a decision issued on December 3, 2010, affirming the trial court's judgment of conviction and sentence. 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings. those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004). However, the undersigned notes that although, as the Ohio Court of Appeals found, the victim testified that she tested negative for HIV in August 2006 (Doc. 6, Trial Tr. 179), her gynecologist testified that the test took place on March 6, 2006. (Doc. 6, Trial Tr. 262).

Ohio Court of Appeals, First Appellate District.[2] (Doc. 5, Ex. 4). The appeal was placed on the court's accelerated calendar. (*See id.*, Exs. 7, 28). In the brief filed by counsel on petitioner's behalf, petitioner presented two assignments of error:

> 1. The trial court erred in convicting the Defendant/Appellant based upon insufficient evidence and/or against the manifest weight of the evidence.
>
> 2. The trial court erred in convicting the Defendant/Appellant at trial where he was denied his right to due process under the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

(*Id.*, Ex. 7). Petitioner specifically claimed in his second assignment of error that he was denied his due process right to present a defense when the trial court "refus[ed] to permit cross-examination of [the victim] as to relevant impeachment issues, merely because the alleged impeachment may have occurred outside the times of the alleged crimes." (*Id.*, pp. 7-8).

On December 3, 2010, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 9).

Petitioner did not perfect a timely appeal to the Ohio Supreme Court. However, the Ohio Supreme Court granted petitioner leave to file a *pro se* delayed appeal. (*See id.*, Exs. 10-12). In his memorandum in support of jurisdiction, petitioner asserted the same claims that he had presented as assignments of error on direct appeal to the Ohio Court of Appeals. (*See id.*, Ex. 14). On July 8, 2011, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 16).

### Rule 26(A) Application For Reconsideration: Ohio Court of Appeals

On August 31, 2011, over eight months after the Ohio Court of Appeals issued its decision on direct appeal and over one month after the Ohio Supreme Court denied petitioner leave to appeal that decision, petitioner filed a *pro se* application for reconsideration under Ohio

---

[2] It is noted that petitioner also filed a separate *pro se* notice of appeal to the Ohio Court of Appeals. (*See* Doc. 5, Ex. 5). The appellate court *sua sponte* consolidated that appeal with the appeal filed by petitioner's counsel. (*Id.*, Ex. 6).

R. App. P. 26(A) with the Ohio Court of Appeals, First Appellate District.  (Doc. 5, Ex. 17).

Petitioner claimed in the application that the appellate court's December 3, 2010 Judgment Entry

did not constitute "an opinion of the court" and that, in fact, no such opinion was ever filed.  (*See*

*id.*).  Petitioner requested the opportunity to be retried on the charges so that he could develop

and present evidence about the "complexity of the HIV virus" and the victim's "sexual lifestyle

and inconsistencies," as well as determine "for certain" from further testing of DNA samples

obtained from both petitioner and the victim "if the victim contracted the disease from the

Appellant-Defendant or the Appell[a]nt-Defendant contracted it from the accuser/victim."  (*Id.*).

On September 20, 2011, the Ohio Court of Appeals summarily denied the application on

the ground that it was "not well taken" under Ohio R. App. P. 11.1(E).  (*Id.*, Ex. 18).[3]

Respondent states that petitioner did not pursue an appeal from that decision to the Ohio

Supreme Court.  (*Id.*, Brief, p. 4).

### Mandamus Petition:  Ohio Supreme Court

Instead, on September 30, 2011, petitioner filed a *pro se* petition for a writ of mandamus

with the Ohio Supreme Court.  (Doc. 5, Ex. 19).  In the petition, petitioner requested the court

"to order the case back to the Court of Common Pleas for re-trial based on the Motion for Re-

Consideration."  (*Id.*).  Petitioner contended that issuance of a writ of mandamus was proper

because no opinion was ever filed by the Ohio Court of Appeals in the direct appeal proceedings

and "no response has ever been conducted since the Relator filed his motion for re-consideration

nor ha[s] the prosecution responded and rebutted the Relator[']s Motion For Reconsideration."

(*Id.*).

---

[3] Although the Ohio Court of Appeals cited to "App.R. 11(E)" in the entry, it appears that a typographical error was made and that the court instead was referring to Ohio R. App. P. 11.1(E).  No sub-section (E) to Ohio Rule App. P. 11 exists.  In contrast, Ohio R. App. P. 11.1 does have a sub-section (E), which specifically governed petitioner's "accelerated calendar" appeal.  Under that provision, decisions in appeals on the court's accelerated calendar "may be by judgment entry" and "[i]t shall be sufficient compliance . . . for the statement of the reason for the court's decision as to each error to be in brief and conclusory form."  Ohio R. App. P. 11.1(E).

The State respondents responded to the mandamus petition by filing a motion to dismiss. (*Id.*, Ex. 20). The respondents contended that petitioner was not entitled to a writ of mandamus because (1) in the direct appeal assigned to the court's accelerated calendar, the appellate court was permitted under Ohio R. App. P. 11.1(E) to issue a judgment entry without opinion; and (2) any issue stemming from the appellate court's alleged failure to act on petitioner's subsequent application for reconsideration was moot given that the court had "already ruled on th[e] motion." (*Id.*).

On December 21, 2011, the Ohio Supreme Court granted the respondents' motion to dismiss and dismissed the cause without opinion. (*Id.*, Ex. 23).

## Federal Habeas Corpus

Petitioner next initiated the instant federal habeas corpus action in January 2012. In the petition, he presents the following claims for relief:

> **Ground One:** The accuser/victim was a known disease carrier and had been contracting diseases since the 1990s. The accuser/victim said she was not having sexual intercourse with no other person but had contracted herpes from someone else during the time she was having sex with the petitioner, but the petitioner did not contract herpes from the accuser/victim. Ms. E[.] the accuser/victim has a history of diseases and infections and it was not determined if the petitioner infected the accuser, or the accuser infected the petitioner.
>
> **Ground Two:** My attorney wanted to get information on the accuser/victim concerning an earlier abortion she had that may have been due to having a disease at the time she claim[ed] to have been with the petitioner. My lawyer was prevented from cross-examining the witness because the time line in the indictment was from March 13, 2007 to May 17, 2008 and the relevant evidence occurred in the spring of 2006.
>
> **Ground Three:** Re-consider the victim/accuser's lifestyle and inconsistencies in the newly provided break down by the petitioner and it will show that the victim/accuser could have been the infector instead of the infectee. The accuser/victim's lifestyle was not carefully examined, as demonstrated in his motion for re-consideration.
>
> **Ground Four:** The First Appellate District Court (Clerk) did not file an opinion with the clerk. A Journal Entry was the only document filed. I sought answers but I kept rec[ei]ving the Journal Entry so I asked the clerk for clarification and

the clerk noted that no opinion was ever filed.  I then discovered that a Journal
Entry must accompany an opinion in order for my appeal to be journalized and
filed with the trial court but it was not.

(Doc. 2, pp. 6, 8, 9, 11).

In the return of writ filed in response to the petition, respondent concedes that the petition

does not pose any statute of limitations concerns.  (Doc. 5, Brief, pp. 6-7).  Respondent contends

that petitioner's fourth ground for relief only raises an issue of state law, which is not cognizable

in this federal habeas proceeding, and that petitioner procedurally defaulted and has waived his

third ground for relief.  (*Id.*, pp. 7-13).  Respondent further argues that to the extent that

petitioner presented the claims alleged in Grounds One and Two of the petition to the state courts

in the direct appeal proceedings, petitioner has not demonstrated that he is entitled to federal

habeas relief based on the merits of those claims.  (*Id.*, pp. 13-23).  Petitioner has filed a reply

brief in response to the return of writ.  (Doc. 7).

## II.  OPINION

### A.  Petitioner Has Waived The Claim Alleged In Ground Three To The Extent It Is Based On Allegations That Were First Asserted By Petitioner In His Rule 26(A) Application For Reconsideration.

In Ground Three of the petition, petitioner claims that, as he demonstrated in his motion

for reconsideration to the Ohio Court of Appeals, a careful examination of the victim's "lifestyle

and inconsistencies" will reveal that the victim could have been the carrier and transmitter of the

HIV virus, rather than petitioner.   (Doc. 2, p. 9).  Respondent contends that to the extent that

petitioner's allegations are based on arguments that were not presented on direct appeal, this

ground for relief is barred from review because it was procedurally defaulted by petitioner in the

state courts.  (Doc. 5, pp. 12-13).  Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or

7

if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris*, 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  In those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).  Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The Court stated:  "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th

8

Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,*

975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th

Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every

relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410

n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

      The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v.*

*Smith,* 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under

the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with
> the rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction. . . . Third, the court must decide whether
> the state procedural forfeiture is an "adequate and independent" state ground on
> which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw,* 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407,

417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also*

*Johnson v. Bradshaw,* __ F. App'x __, No. 06-3141, 2012 WL 3241545, at *2 (6th Cir. Aug. 9,

2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a

claim is procedurally defaulted under the adequate and independent state ground doctrine,

federal habeas corpus review of the defaulted claim is precluded unless the petitioner can

demonstrate cause for and prejudice from his procedural default or that failure to consider the

defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner,* 622 F.3d at 495

(citing *Maupin,* 785 F.2d at 138); *Johnson, supra,* 2012 WL 3241545, at *3. *See also Coleman,*

501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v.*

*Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

      In this case, petitioner committed a procedural default to the extent that he first presented

claims alleged in Ground Three to the state courts in his Rule 26(A) application for

reconsideration, which was belatedly filed over eight months after the Ohio Court of Appeals

issued its judgment entry affirming the trial court's judgment on direct appeal. As petitioner

himself expressly recognized (*see* Doc. 5, Ex. 17, p. 1), Ohio R. App. P. 26(A) provides that an

application for reconsideration must be filed within ten days after the court's direct appeal

decision is mailed to the parties. Petitioner argued, however, that his application was timely

because the Ohio Court of Appeals only filed a judgment entry in his appeal, which was

insufficient to constitute a final appealable "opinion" of the court. (*Id.*, pp. 1-2). The Ohio Court

of Appeals summarily denied the application for reconsideration, apparently because it found,

contrary to petitioner's contention, its judgment entry filed on December 3, 2010 was sufficient

to satisfy the requirements set forth in Ohio R. App. P. 11.1(E) for a properly entered final

decision in the appeal matter. (*See* Doc. 5, Ex. 18). Therefore, it appears that the court did not

consider the merits of petitioner's claims and instead relied on an adequate and independent state

procedural rule in denying petitioner's application for reconsideration.

In any event, petitioner committed another procedural default because he did not pursue a

further appeal to the Ohio Supreme Court and is not permitted at this late juncture to seek a

delayed appeal to the state's highest court in the matter involving a motion for reconsideration.

*See* Ohio S.Ct. Prac. R. 7.01(A)(5)(b)-(c); *see also* Ohio S.Ct. Prac. R. 7.01(A)(4)(c).

Petitioner instead filed a petition for a writ of mandamus with the Ohio Supreme Court

based on claims that (1) the Ohio Court of Appeals failed to file an opinion to accompany its

judgment entry on direct appeal and, therefore, had not issued a final appealable decision in the

appeal; and (2) the state appellate court officials named as respondents in the mandamus petition

had not responded to his application for reconsideration. (*See* Doc. 5, Ex. 19). The Ohio

Supreme Court granted the respondents' motion to dismiss, which was not based on the merits of

any claim raised in petitioner's application for reconsideration, but rather on the ground that

under well-established Ohio law, petitioner could not demonstrate he was entitled to the issuance

of the writ, which required a showing that petitioner had a clear legal right to the requested relief;

the respondents were under a "clear legal duty to perform the requested act;" and petitioner had

"no plain and adequate remedy at law." (*See id.*, Doc. 20, "Memorandum In Support," pp. 2-3)

(citing *State ex rel. Van Gundy v. Indus. Comm'n*, 856 N.E.2d 952 (Ohio 2006)). Specifically,

respondents contended that the prerequisites for mandamus relief were not met because (1) in the

direct appeal matter, the Ohio Court of Appeals had satisfied its obligations by issuing a

judgment entry permitted by Ohio R. App. P. 11.1(E), and petitioner had an adequate remedy at

law to the extent that he could appeal the "final appealable order" to the Ohio Supreme Court;

and (2) the Ohio Court of Appeals had ruled on petitioner's application for reconsideration,

which rendered his request regarding that matter moot. (*See id.*, Exs. 20, 23). In summarily

granting the respondents' motion to dismiss based on the adequate and independent state grounds

pertaining to the mandamus remedy, the Ohio Supreme Court was not provided with an

opportunity to consider the merits of any claims raised by petitioner in his separate application

for reconsideration to the Ohio Court of Appeals. Therefore, this Court's review of such claims

is barred unless petitioner can demonstrate cause for and prejudice from his procedural default in

the state courts, "or demonstrate that failure to consider the defaulted claims will result in a

fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750.

Petitioner has neither argued nor presented any evidence establishing cause for his

procedural default in this case. Moreover, petitioner has not demonstrated that failure to

consider the issues that were presented for the first time in his motion for reconsideration to the

Ohio Court of Appeals will result in a "fundamental miscarriage of justice," or in other words,

that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See*

*Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Although

11

petitioner has challenged the weight and sufficiency of evidence supporting his felonious assault conviction, actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

To establish a credible claim of actual innocence sufficient to overcome a procedural bar to review, the petitioner must "establish in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House,* 547 U.S. at 536-37 (quoting *Schlup,* 513 U.S. at 327); *cf. Souter v. Jones,* 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008). The standard is "demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327). To be credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *House,* 547 U.S. at 537 (quoting *Schlup,* 513 U.S. at 324); *see also Calderon v. Thompson,* 523 U.S. 538, 559 (1998). *Cf. Perkins v. McQuiggin,* 670 F.3d 665, 671 (6th Cir.) ("claims of actual innocence must be based on new reliable evidence") (internal citation and quotation omitted), *cert. granted,* 133 S.Ct. 527 (2012).[4]

Petitioner has not established a credible claim of actual innocence in this case. Most of the evidence that petitioner relied on in support of his motion for reconsideration regarding the "complexity of the HIV virus," as well as the victim's "sexual lifestyle" and alleged "inconsistencies," was actually presented at his trial. (*See* Doc. 5, Ex. 17; Doc. 6). Furthermore, to the extent petitioner contended in that motion that additional evidence could have been

---

[4] It is noted that the Supreme Court granted certiorari in *Perkins* to the State respondents to resolve a separate issue decided in the habeas petitioner's favor by the Sixth Circuit as to whether a showing of some "extraordinary circumstance" and "reasonable diligence" are "prerequisite[s] for equitably tolling AEDPA's statute of limitations based on a credible claim of actual innocence." *See Perkins,* 670 F.3d at 672-76.

developed and further DNA testing could been conducted to determine whether the victim

infected petitioner with the HIV virus rather than the other way around, his arguments are purely

speculative.  In any event, as discussed later in addressing the merits of petitioner's claims in

Grounds One and Two of the petition, even assuming petitioner could show through additional

testimony and DNA testing that the victim was the initial carrier of the HIV virus who

transmitted it to petitioner, such evidence does not demonstrate petitioner's innocence.  To

establish petitioner's guilt on the charges contained in the indictment, the State was only required

to prove beyond a reasonable doubt that petitioner, knowing he had tested positive for HIV,

engaged in sexual conduct with the victim without first disclosing that knowledge to her.  *See*

Ohio Rev. Code § 2903.11(B)(1); *see also State v. Gonzalez*, 796 N.E.2d 12, 32 (Ohio Ct. App.

2003) ("The jury needed to determine [under Ohio Rev. Code § 2903.11(B)(1)] only whether an

HIV-positive individual, who knew he was HIV-positive, engaged in sexual conduct with

another person without disclosing to the other person that he was HIV-positive.").  The felonious

assault offense, as defined in Ohio Rev. Code § 2903.11(B)(1), does not include any element

requiring proof that the defendant was the initial carrier of the HIV virus or, indeed, that the

victim was even infected with the virus.  *See Gonzalez*, 796 N.E.2d at 32.  Therefore, the issue as

to whether petitioner or the victim was the party who first contracted and transmitted the HIV

virus is irrelevant to the determination of petitioner's guilt or innocence in this case.

Accordingly, in sum, the undersigned concludes that any claims alleged in Ground Three,

which were raised for the first time by petitioner in his motion for reconsideration to the Ohio

Court of Appeals, are procedurally defaulted.  Because petitioner has not demonstrated cause for

his procedural default or that a fundamental miscarriage of justice will occur if such claims are

not considered by this Court, the ground for relief is waived.  To the extent that arguments

initially raised on direct appeal were reasserted by petitioner in his application for

reconsideration, the undersigned will consider those contentions in addressing the merits of the non-defaulted claims alleged in Grounds One and Two of the petition. Therefore, Ground Three is subject to dismissal with prejudice on the ground that it is procedurally barred from review in this federal habeas proceeding.

**B.  Petitioner Has Not Demonstrated That He Is Entitled To Relief Based On The Claim Alleged In Ground Four, Which At Most Raises A State-Law Issue That Is Not Cognizable In This Federal Habeas Proceeding.**

In Ground Four of the petition, petitioner claims that he is entitled to federal habeas relief because the Ohio Court of Appeals erred by failing to file an opinion to accompany the December 3, 2010 Judgment Entry affirming the trial court's judgment of conviction and sentence on direct appeal. (*See* Doc. 2, p. 11). In denying petitioner's application for reconsideration and in granting the respondents' motion to dismiss petitioner's subsequent petition for a writ of mandamus, both the Ohio Court of Appeals and the Ohio Supreme Court apparently found that the appellate court did not commit any error by entering only a judgment entry, which was sufficient under Ohio R. App. P. 11.1(E) to constitute a final appealable order in petitioner's "accelerated calendar" appeal. (*See* Doc. 5, Exs. 18, 20, 23).

As an initial matter, the undersigned rejects petitioner's contention that the Ohio Court of Appeals erred in issuing only a judgment entry in his "accelerated calendar" appeal. As respondent has contended in the return of writ (*see* Doc. 5, p. 8), it appears clear that as a matter of Ohio law and in accordance with the Ohio courts' rulings in this case, the state appellate court was not required to file an opinion to accompany its December 3, 2010 judgment entry. *See* Ohio R. App. P. 11.1(E).

In any event, petitioner's allegations of error by the Ohio Court of Appeals in interpreting and applying its own procedural rules presents an issue of state-law only, which is not cognizable in this federal habeas proceeding. A federal court may review a state prisoner's habeas petition

14

only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Petitioner has not alleged, nor is there evidence in the record even remotely suggesting, that he was denied meaningful appellate review by the Ohio Court of Appeals. The mere fact that the appellate court did not file an opinion in addition to its judgment entry simply does not give rise to a claim of federal constitutional dimension.

Therefore, petitioner is not entitled to relief based on the claim alleged in Ground Four of the petition.

### C. Petitioner Has Not Demonstrated That He Is Entitled To Relief Based On The Merits Of His Claims In Grounds One And Two Challenging The Sufficiency Of Evidence And The Trial Court's Ruling Limiting The Victim's Cross-Examination.

In Ground One of the petition, petitioner essentially alleges that the evidence presented at trial was insufficient to support his felonious assault conviction because evidence was introduced regarding the victim's "history of [sexually-transmitted] diseases and infections," which undermined the credibility of her testimony that she had an exclusive relationship with petitioner during the relevant time period and also created a reasonable doubt as to who first contracted the HIV virus and infected the other person with it. (*See* Doc. 2, p. 6). In Ground Two of the petition, petitioner essentially claims that he was denied due process when the trial court prevented his attorney from cross-examining the victim about an "earlier abortion" she had in the "spring of 2006" because the abortion allegedly occurred outside the relevant time frame of March 13, 2007 to May 17, 2008. (Doc. 2, p. 8). The claims alleged in Grounds One and Two were fairly presented to both the Ohio Court of Appeals and the Ohio Supreme Court on direct appeal and, therefore, are subject to review on the merits. (*See* Doc. 5, Exs. 7, 14).

15

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional issues, which were addressed by the Ohio Court of Appeals in its December 3, 2010 Judgment Entry (*see id.*, Ex. 9), is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's

16

> determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ S.Ct. __, No. 11-465, 2013 WL 610199, at *3 (U.S. Feb. 20, 2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases

17

already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the

Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179
> L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that
> was before the state court that adjudicated the prisoner's claim on the merits. We
> said that the provision's "backward-looking language requires an examination of
> the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The
> reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1)
> requires federal courts to "focu[s] on what a state court knew and did," and to
> measure state-court decisions *as of 'the time the state court renders its decision.'*
> *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .;
> emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right

had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v.*

*Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may

issue only if the application of clearly-established federal law is objectively unreasonable "in

light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing

*Williams,* 529 U.S. at 412).

The Court turns now to address each ground for relief in accordance with the standard of

review enunciated in 28 U.S.C. § 2244(d), as interpreted by the Supreme Court.

### 1. **Ground One: Sufficiency of the Evidence.**

The Ohio Court of Appeals was the only state court to issue a reasoned decision

addressing the merits of petitioner's assignment of error challenging the sufficiency of the

evidence.[5] Relying on both state authorities and the Supreme Court's decision in *Jackson v.*

---

[5] Petitioner also asserted in the assignment of error that his conviction was against the manifest weight of
the evidence. Although the Ohio Court of Appeals also addressed that state-law claim in overruling the assignment
of error, only petitioner's claim challenging the sufficiency of the evidence raises a federal due process issue subject
to review in this federal habeas proceeding. *See, e.g., Richardson v. Smith,* No. 3:11cv1217, 2012 WL 5903986, at
*17 (N.D. Ohio Oct. 30, 2012) (Report & Recommendation) (quoting *Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982))

*Virginia*, 443 U.S. 307, 319 (1979), the state appellate court rejected petitioner's claim as follows:

> The state adduced ample evidence, including the testimony of the victim, her doctor, and the physician who had treated Zonou's HIV in 2007, to prove that Zonou, with full knowledge that he was HIV positive, had engaged in sexual conduct with T.E., without disclosing his HIV status to her.

> Moreover, the record reflects substantial, credible evidence from which the trier of fact could have reasonably concluded that all elements of the charged crime had been proved beyond a reasonable doubt.

(Doc. 5, Ex. 9, p. 2) (footnote with citations omitted).

The Ohio Court of Appeals correctly cited the Supreme Court's *Jackson* decision as governing the resolution of the constitutional issue. As the state appellate court apparently understood, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

The State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume– even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v.*

---

("claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review" because it is "derived from purely state law whereby the state appellate court sits as a 'thirteenth juror and disagrees with fact finder's resolution of conflicting testimony' and finds that the 'jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered'"), *adopted*, 2012 WL 5903896 (N.D. Ohio Nov. 26, 2012); *cf. Nash v. Eberlin*, 258 F. App'x 761, 765 & n.4 (6th Cir. 2007) (in holding that "a state court's decision on the manifest weight of the evidence subsume[s] a decision on the sufficiency of the evidence" for purposes of procedural default analysis, the Sixth Circuit also recognized that "a manifest-weight-of-the-evidence argument is a state-law argument").

*Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve

conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the

evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to

reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective

determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See*

*id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir.

1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v.*

*Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th

Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is

enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a

reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at

796-97 (and Sixth Circuit cases cited therein).

Furthermore, as discussed above, federal habeas review of a claim challenging the

sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567

F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might

view facts differently than [the habeas court] would." The federal habeas court must defer not

only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must

also "defer to the *state appellate court's* sufficiency determination as long as it is not

unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir.

2011), *cert. denied*, 132 S.Ct. 1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75

(6th Cir. 2011), *cert. denied*, 132 S.Ct. 1152 (2012). Therefore, as the Sixth Circuit went on to

emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary
> showings would be sufficient to convince us of the petitioner's guilt.  We cannot
> even inquire whether *any* rational trier of fact would conclude that petitioner . . .
> is guilty of the offenses for which he was charged.  Instead, we must determine
> whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a
> rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt
> based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned

concludes that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an

unreasonable application of *Jackson*.

The elements of the felonious assault offense alleged in Count One of the indictment (*see*

Doc. 5, Ex. 1), which the State was required to prove beyond a reasonable doubt, were that

during the relevant time period between May 13, 2007 and May 15, 2008: (1) petitioner had

"knowledge that [he] ha[d] tested positive for a virus that causes acquired immunodeficiency

syndrome" (AIDS); and (2) petitioner "knowingly . . . [e]ngaged in sexual conduct" with the

victim without first disclosing to her that he had tested positive for a virus that causes AIDS.  *See*

Ohio Rev. Code § 2903.11(B)(1); *see also State v. Gonzalez*, 796 N.E.2d 12, 32 (Ohio Ct. App.

2003).  Under Ohio law, a person who knows that he is "a carrier of HIV" or tested positive for

HIV has the requisite knowledge for criminal culpability under Ohio Rev. Code § 2903.11(B)(1).

*See State v. Davis*, No. C-120076, 2012 WL 6085366, at *2 (Ohio Ct. App. Dec. 7, 2012); *cf.*

*Gonzalez*, 796 N.E.2d at 32.  In this case, it was reasonable for the Ohio Court of Appeals to

conclude under the applicable standard set forth in *Jackson*, 443 U.S. at 319, that after viewing

the evidence in the light most favorable to the prosecution, a rational trier of fact could have

found all of the essential elements of the crime charged in Count One had been proven beyond a

reasonable doubt.

First, as the state appellate court pointed out, "ample evidence" was introduced at trial to

establish that during the relevant time period, petitioner had "full knowledge" of the fact that he

was a carrier of a virus that causes AIDS.  Dr. Lawrence Hohditch, an internal medicine

physician at two Cincinnati Health Department clinics, testified that petitioner was tested for

hepatitis and HIV at a clinic in February 2007, and that when the test results came back,

Hohditch expressly informed petitioner in an office visit on March 13, 2007 that he had tested

positive for HIV, as well as Hepatitis B and Hepatitis C.  (*See* Doc. 6, Trial Tr. 293, 297, 300).

Dr. Hohditch explained to petitioner that HIV "could be transferred sexually" and that he

"should avoid possibly transmitting this to others."  (*Id.*, Tr. 302).  Dr. Hohditch also offered

petitioner "a prescription for condoms," but petitioner said "he was not sexually active and was

not interested."  (*Id.*).  Dr. Hohditch referred petitioner to the University of Cincinnati's

Infectious Disease Center (IDC) for HIV treatment.  (*Id.*, Tr. 304-05).  Dr. Bambosh Darbari

Kaul, an attending physician at the IDC, testified that petitioner was first seen at IDC three days

later, on March 16, 2007.  (*Id.*, Tr. 319, 323).  At the intake session, which is an "extensive visit"

usually lasting two to three hours, petitioner was retested for HIV and educated about the virus.

(*Id.*, Tr. 323, 325-26).  The positive HIV test result was "reconfirmed" by the testing conducted

at the IDC.  (Id., Tr. 327).  Dr. Kaul spoke to petitioner about his HIV-positive test in an hour-

long follow-up appointment with petitioner.  (*Id.*, Tr. 378).  Dr. Kaul specifically told petitioner

that "he had HIV infection;" that his "T cells were in the 200 range" at a "high viral load;" and

that "he needed to be on treatment, and . . . could get very sick and progress on to developing

illness like AIDS if he did not get treated quickly."  (*Id.*, Tr. 329).  From this evidence, any juror

could have reasonably inferred that by mid-March 2007, petitioner knew that he was a carrier of

a virus that causes AIDS and, moreover, that he could transfer the virus to another person

through sexual contact.

  Second, as the Ohio Court of Appeals also found, "ample evidence" was introduced at

trial to show that petitioner knowingly engaged in sexual conduct with the victim on numerous

occasions during the relevant time period without disclosing to the victim that he had tested

positive for HIV. The victim testified that during the period from March 15, 2007 through May

15, 2008, she had "sexual relations" with petitioner on at least ten occasions. (Doc. 6, Trial Tr.

187). She also testified that petitioner never informed her that "he was positive for HIV." (*Id.*).

The victim first learned that she was "HIV positive" in April 2008. (*Id.*, Tr. 180-81). She said

that "immediately" after she was informed of the diagnosis, she called petitioner and told him,

"You need to be checked out because I am HIV positive." (*Id.*, Tr. 180-81). The victim

testified as follows about petitioner's response to her news:

> All he said was, Oh, shit. . . . I said you need to get tested. He said, Okay, I am
> going to go, I am going to go right away and get tested. He said it's going to take
> a week to get the results.

(*Id.*, Tr. 182). The victim stated that petitioner called her a week later to tell her that he took the

test and that he was HIV positive. (*Id.*, Tr. 230). She said that the last time she had sex with

petitioner, on May 16, 2008, she knew that petitioner had tested positive for HIV, but did not

know that petitioner had known long before her own diagnosis of his HIV status. (*Id.*, Tr. 230-

31). The jury properly acquitted petitioner of the felonious assault charge that arose from the

May 16, 2008 sexual encounter, since prior to that date, petitioner had disclosed to the victim

that he had tested positive for HIV. On the other hand, given the evidence presented at trial

regarding petitioner's silence in the many months preceding the victim's HIV diagnosis, as well

as petitioner's silence when the victim told him she was HIV positive and urged him to be tested,

a rational juror could infer from her testimony that at some point between May 13, 2007, when

petitioner was first informed that he was HIV positive, and May 15, 2008, petitioner knowingly,

and with full knowledge of his HIV status, engaged in sexual conduct with the victim without

disclosing that knowledge to her.

Petitioner has suggested that the evidence was insufficient to establish his guilt because evidence was introduced at trial regarding the victim's medical history, including her prior diagnoses in 2006 for flu-like symptoms and various sexually-transmitted diseases, which undermines the credibility to be accorded her testimony. However, under *Jackson*, the reviewing court is precluded from reevaluating the credibility of witnesses or reweighing the evidence. *See Jackson*, 443 U.S. at 318-19 & n.13; *see also Fisher,* 648 F.3d at 450. Rather, the Court must defer to the jury's resolution of the conflicts in the evidence in favor of the prosecution. *See Jackson*, 443 U.S. at 326.

Finally, petitioner contends that the evidence was insufficient to establish an essential element of the charged felonious assault offense because the evidence regarding the victim's sexual lifestyle and medical history created a reasonable doubt as to which party first contracted the disease and infected the other person with the HIV virus. However, Ohio Rev. Code § 2903.11(B)(1) does not include as an element of the offense that in order for a person to be found guilty of felonious assault, it must be established that the person was the initial carrier of the HIV virus who transmitted it to the victim. All that the State was required to prove beyond a reasonable doubt under the statute was that petitioner, with knowledge that he had tested positive for a virus that causes AIDS, "knowingly . . . [e]ngaged in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct." Ohio Rev. Code § 2903.11(B)(1). *Cf. Gonzalez*, 796 N.E.2d at 32 (holding that the "jury had no need to know whether the victim . . . developed HIV" because "[a]s soon as the sexual conduct occurred without disclosure, the crime was committed"). As discussed above, sufficient evidence was presented to establish those facts beyond a reasonable doubt.

## 2. **Ground Two: Limitation On The Victim's Cross-Examination.**

With respect to the claim alleged in Ground Two of the petition, the trial record reflects

24

that the victim testified at trial that she and petitioner were involved from December 2004

through May 16, 2008, in what she believed to be a serious, committed and "exclusive"

relationship. (*See* Doc. 6, Trial Tr. 172-73, 178-79, 183, 187-88, 192-93).  The victim stated that

at one point, in the summer of 2005, she became pregnant with petitioner's child and had an

abortion at petitioner's urging.  (*Id.*, Tr. 175-76).  The relationship ended on May 17, 2008, when

the victim contacted the police after discovering that petitioner was married to another woman,

whom he wed a year and a half earlier in October 2006.  (*Id.*, Tr. 190-91 220-22, 231-33).

Later in the trial, outside of the jury's presence, defense counsel sought to cross-examine

the victim about another abortion she may have had because a review of her medical records had

revealed that on "two separate occasions" she told her medical providers that she "had two

abortions in her past."  (Doc. 6, Trial Tr. 246).  Without knowing what her testimony would be,

petitioner's counsel wanted to cross-examine the victim in order to determine "whether the other

abortion in this matter is in fact relevant."  (*Id.*, Tr. 246-47).  Counsel contended that if the other

abortion happened at some point between March 2006, when the victim tested "negative" for

HIV, and May 2008, the evidence would be "relevant" to the extent that it would "open the door

concerning another person who might have been providing sexually transmitted diseases to Ms.

E[.], as well as "undermine her credibility" by "contradict[ing] her testimony regarding having

one sexual partner during the time period 2004 to 2008."  (*See id.*, Tr. 247-48).  Counsel further

argued:

> Let's say – I don't know this to be true, but let's say Ms. E[.] had some
> relationship in 2006, contracted this from someone else in 2006 and started
> showing symptoms, but was not HIV tested until 2008.  I mean that to me is
> relevant to this case and it would be somebody else in fact, and the charges in this
> case are on the wrong person.

(*Id.*, Tr. 249-50).

The trial court ruled that it was bound by the dates set forth in the indictment and,

therefore, would not allow cross-examination of the victim about other prior abortions she may

have had outside the charged time period between March 13, 2007, when petitioner was

informed that he was HIV positive, and May 15, 2008.  (*Id.*, Tr. 249).  Pointing out that courts

are prohibited from giving "advisory opinions," the trial court refused "to put anything in the

record" that did not fall within the indictment's time frame unless additional information "comes

up in subsequent conversation and comes in and there is a stipulation and some medical records

come in."  (*Id.*, Tr. 250-51).

On direct appeal, petitioner claimed that the trial court erred in limiting the scope of the

victim's cross-examination to the dates specified in the indictment.  (Doc. 5, Ex. 7, pp. 7-8).

Relying solely on state evidentiary standards and case-law, including its prior decision in

*Gonzalez*, the court overruled petitioner's assignment of error as follows:

> In her testimony, T.E. admitted that Zonou had impregnated her in 2005 and that
> she had terminated her pregnancy.  Zonou conducted a thorough cross-
> examination of T.E.  Out of the hearing of the jury, Zonou sought permission to
> question T.E. about any other abortions that she may have had during the period
> of her relationship with Zonou in an attempt to contradict her testimony that
> Zonou had been her only sexual partner, and to "undermine her credibility."  The
> trial court limited any questioning to the period specified in the indictment—from
> the date Zonou learned that he was HIV positive to May 2008.  Zonou chose not
> to question T.E. further.
>
> "The scope of cross-examination and the admissibility of evidence during cross-
> examination are matters which rest in the sound discretion of the trial judge."
> Here, the jury had no need to know whether T.E. had had other sexual partners or
> even if she had ultimately "developed HIV, experienced emotional distress, or
> suffered any consequences from the sexual encounter. *** As soon as the sexual
> conduct occurred without disclosure, the crime [had been] committed."  Thus the
> trial court did not abuse its sound discretion in limiting the scope of cross-
> examination.

(*Id.*, Ex. 9, pp. 2-3) (footnotes with citations omitted).

As a threshold matter, this Court is precluded from considering any claim by petitioner

that the Ohio Court of Appeals erred in its application and interpretation of Ohio law in holding

that the trial court did not abuse its discretion in limiting the scope of the victim's cross-

examination. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

Moreover, to the extent that petitioner alleges that the trial court's ruling implicates federal due process concerns subject to review by this Court because he was denied the opportunity to present a defense and to confront the witnesses against him, petitioner has failed to present any evidence in support of such claims. As defense counsel conceded at trial, no information has been developed or presented to show that the limitation placed on cross-examination resulted in the exclusion of even arguably "relevant" evidence. In the absence of any evidence in the record as to what the victim would have said on cross-examination about another abortion she may have had at some unknown time in the past, petitioner's argument that he was prevented from impeaching the victim's credibility about the exclusivity of her relationship with petitioner, or from showing that the victim may have contracted the HIV virus from someone other than petitioner, is purely speculative.

In any event, even assuming that the victim would have testified that she had another abortion during the additional one-year period between March 2006 and March 13, 2007 if the scope of cross-examination had been extended as requested by defense counsel, the undersigned finds that neither the reasoning nor the result of the Ohio Court of Appeals' decision is unreasonable or contradicts the relevant Supreme Court precedents. *See Otte*, 654 F.3d at 600 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)); *see also Harrington*, 131 S.Ct. at 784.

First, petitioner has suggested that he was prevented by the trial court's ruling from presenting a full defense because the evidence of an abortion during the period between March 2006 and March 13, 2007, the date petitioner tested positive for HIV, could have served to show

27

that the victim may have contracted the virus first from another individual.  The Supreme Court

has long recognized that "[w]hether rooted directly in the Due Process Clause of the Fourteenth

Amendment, . . . or in the Compulsory Process or  Confrontation clauses of the Sixth

Amendment, . . . the Constitution guarantees criminal defendants a meaningful opportunity to

present a complete defense."  *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (and Supreme

Court cases cited therein) (internal citations and quotation marks omitted); *see also Boggs v.*

*Collins*, 226 F.3d 728, 743 (6th Cir. 2000).  However, by the same token, "the Supreme Court

has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right

to ride roughshod over reasonable evidentiary restrictions."  *Rockwell v. Yukins*, 341 F.3d 507,

512 (6th Cir. 2003) (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988), and *Chambers v.*

*Mississippi*, 410 U.S. 284, 302 (1973)); *see also Couturier v. Vasbinder*, 385 F. App'x 509, 516

(6th Cir. 2010).  As the Supreme Court stated in *Taylor*, 484 U.S. at 410, "[t]he accused does not

have an unfettered right to offer testimony that is incompetent, privileged, or otherwise

inadmissible under standard rules of evidence."  Indeed, acknowledging its "traditional

reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial

courts . . . called upon to make dozens, sometimes hundreds, of decisions concerning the

admissibility of evidence," the Supreme Court emphasized in *Crane* that the Constitution "leaves

to the judges who must make these decisions 'wide latitude' to exclude evidence that is

'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice [or]

confusion of the issues.'"  *Crane,* 476 U.S. at 689-90 (quoting *Delaware v. Van Arsdall*, 475

U.S. 673, 679 (1986)).

Here, as the Ohio Court of Appeals reasonably determined as a matter of state law, even

assuming that the abortion evidence could have supported the inference that the victim was

infected by someone other than petitioner, such evidence was not relevant to petitioner's guilt or

28

innocence for felonious assault under Ohio Rev. Code § 2903.11(B)(1) and may have even posed an undue risk of "confusion of the issues" if it had been introduced at trial. As discussed above in addressing the merits of the claim alleged in Ground One challenging the sufficiency of the evidence, as well as petitioner's procedural default of the claim alleged in Ground Three, petitioner could be found guilty under § 2903.11(B)(1) even if it the evidence had established that the victim was the first person to contract the HIV virus, or had been infected by another person, or had never tested positive for the virus. *Cf. Gonzalez*, 796 N.E.2d at 32. The crime was committed by petitioner simply by engaging in sexual conduct with the victim without first informing her that he had tested positive for HIV. *Id.* As the Ohio Court of Appeals reasonably concluded, "the jury had no need to know whether T.E. had had other sexual partners or even if she had ultimately 'developed HIV, experienced emotional distress, or suffered any consequences from the sexual encounter.'" (Doc. 5, Ex. 9, p. 3) (quoting *Gonzalez*, 796 N.E.2d at 32). Therefore, the limitation placed on the victim's cross-examination regarding a matter, that, at most, was only "marginally relevant," while posing a significant risk of "confusion of the issues," does not trigger any concerns of constitutional dimension regarding petitioner's alleged inability to present a full defense.

Second, petitioner has contended that his Sixth Amendment right to confront the witnesses against him was violated by the exclusion of the abortion evidence, which would have served to impeach the victim's credibility by undermining her testimony that she was involved in an "exclusive" relationship with the petitioner. The Sixth Amendment guarantees the right of an accused in a state criminal prosecution to confront the witnesses against him. U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). A primary interest secured by the Confrontation Clause is the right of cross-examination, "in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of

29

compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony, whether he is worthy of belief." *Douglas v. Alabama*, 380 U.S. 415, 418-19 (1965); *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). The Supreme Court has recognized that exposure of an adverse witness's "motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17; *see also Van Arsdall*, 475 U.S. at 678-79. However, by the same token, like the corollary right to present a defense, the defendant's right of cross-examination is not unlimited. The Supreme Court has held that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

In a case such as this, where the court did not "completely bar[] exploration of a relevant subject on cross-examination," but rather limited the extent of cross-examination, the "trial judge retains a much wider latitude of discretion." *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989); *see also Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006); *Boggs*, 226 F.3d at 743. The inquiry in assessing whether Confrontation Clause concerns are even implicated in such a case is "whether the jury had enough information, despite the limits place on otherwise permitted cross-examination, to assess the defense theory." *Stewart*, 468 F.3d at 347 (6th Cir. 2006) (quoting *Dorsey*, 872 F.2d at 167). "Once cross examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *Boggs*, 226 F.3d at 743 (quoting *Dorsey*, 872 F.2d at 167); *see also Couturier*, 385 F. App'x at 514-15.

Here, the undersigned concludes that no Confrontation Clause concerns are implicated to the extent petitioner has argued that the abortion evidence would have served to undermine the

30

victim's credibility regarding the exclusivity of her relationship with petitioner. As discussed above, it was reasonable for the state appellate court to conclude that such evidence was irrelevant because the fact that the victim may have had other sexual partners had no bearing on the issue to be decided by the jury as to whether petitioner committed a felonious assault by engaging in sexual conduct with the victim without disclosing to her that he had tested positive for HIV.

Moreover, to the extent petitioner claims that such evidence would have generally cast doubt on the veracity of the victim's trial testimony, it would have been merely cumulative to impeaching evidence that defense counsel was permitted to elicit on cross-examination of the victim. Specifically, the trial court allowed defense counsel to cross-examine the victim extensively about (1) the couple's frequent break-ups, often for months, during the time she claimed to be exclusively involved with petitioner; (2) an incident in March 2007, around the same time that petitioner tested positive for HIV, when the victim was fired from a job at Cincinnati Bell for looking up personal information about a male "friend" who purportedly owed her money on a car she rented for him; and (3) the victim's medical record, which revealed that in 2007, she was diagnosed with various chronic sexually-transmitted diseases that were not shown to be attributable to petitioner. (*See* Doc. 6, Trial Tr. 192-210, 216-19). Perhaps most importantly, defense counsel was permitted to elicit testimony from the victim regarding her motivations for pursuing criminal charges and testifying against petitioner (*i.e.*, anger at petitioner upon discovering he had a wife) and that, despite testimony by her doctor to the contrary, she was never told that she testified positive for sexually-transmitted diseases until April 2008. (*See id.*, Tr. 207-10, 219-22, 263-66). Defense counsel argued at length in closing that all of these inconsistencies and problems in the victim's testimony demonstrated that her testimony was not to be believed. (*See id.*, Tr. 398-405). The jury, therefore, was aware of the

31

defense theory that the victim fabricated the accusation against petitioner and presented false testimony at trial to obtain his conviction. Because the jury had sufficient evidence before it to assess the defense theory without any further testimony about an abortion the victim may have had between March 2006 and March 2007, the undersigned concludes that the limitation placed on the victim's cross-examination did not rise to the level of a violation of the Confrontation Clause. In any event, under the harmless-error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993), which applies to this federal habeas case, the undersigned finds that any error in excluding the additional evidence of inconsistency in the victim's account of the events did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Cf. Couturier*, 385 F. App'x at 515-16.

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief based on the merits of his claims alleged in Grounds One and Two of the petition. He has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of those claims conflicts with the relevant Supreme Court precedents, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, Grounds One and Two should be denied with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Three, which this Court has concluded is waived and thus procedurally barred from review, because under the first of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether

32

this Court is correct in its procedural ruling.[6] A certificate of appealability also should not issue with respect to the non-defaulted claims alleged in Grounds One, Two and Four of the petition in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/8/2013

Karen L. Litkovitz
United States Magistrate Judge

---

[6]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the defaulted ground for relief. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CLAUDE ZONOU,                                    Case No. 1:12-cv-69
      Petitioner

      vs                                         Barrett, J.
                                                 Litkovitz, M.J.
WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Claude Zoom # 617-832
Chillicothe Corr. Inst.
PO Box 5500
Chillicothe, OH 45601

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7011 3500 0001 5345 5314

PS Form **3811**, February 2004        Domestic Return Receipt        102595-02-M-1540